# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GAYTAN, JUAN and | ) | Case No. 05-05267-TLM |
| GAYTAN, FRANCISCA, | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |

## INTRODUCTION

Juan and Francisca Gaytan ("Debtors") filed a petition for chapter 7 bankruptcy relief on October 14, 2005, just prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Debtors brought a motion, Doc. No. 10, seeking sanctions for violation of the automatic stay under § 362(h)[1] against one of their creditors, Bonneville Billing & Collections, Inc. ("Bonneville") and its attorney, Robert Talboy ("Talboy").

The motion came on for hearing on November 14, 2005, and was taken under advisement upon submission of both parties' written closing arguments. The Court has reviewed those briefs, Doc. Nos. 18, 19, and the evidence presented at hearing. The following constitutes its findings of fact and conclusions of law as

---

[1] All citations are to the pre-BAPCPA Code, Title 11, U.S. Code.

MEMORANDUM OF DECISION - 1

required by Rule.

**BACKGROUND AND FACTS**

As noted, Debtors filed this bankruptcy case on October 14, 2005. They did not file a mailing matrix of their creditors until October 30, 2005, and the Bankruptcy Noticing Center ("BNC") did not mail a general notice of bankruptcy to creditors until November 4, 2005. *See* Doc. No. 14.

Prior to bankruptcy, Bonneville initiated a continuing garnishment of Mrs. Gaytan's wages through its attorney, Talboy.[2] Despite Debtors' knowledge that Bonneville had a garnishment in place, Debtors's counsel did not alert Bonneville immediately upon filing Debtors' bankruptcy petition. Instead, on October 19, 2005, at 4:01 p.m., five days after Debtors filed their petition and the afternoon before Mrs. Gaytan's next scheduled payday, Debtors' counsel sent Talboy a fax informing him of Debtors' bankruptcy. *See* Ex. 1. Debtors' counsel never attempted to contact Bonneville directly, nor did he attempt to speak with Talboy or anyone at his office personally to confirm the fax was received.

Mrs. Gaytan's October 20, 2005 paycheck, covering the pay period between October 2 and October 15, 2005, was garnished in the amount of

---

[2] Idaho law provides for "continuing garnishments" effective on a debtor's wages until released or satisfied. *See* Idaho Code § 8-509. The details of the garnishment were not provided here, but the evidence did establish that prior garnishment(s) had occurred, as the sheriff held $224.56, some $87.33 more then the garnishment at issue. The repeating nature of the garnishments, and knowledge of the October 20 payday on which the next garnishment would occur, strongly suggests a continuing garnishment was in place.

MEMORANDUM OF DECISION - 2

$137.33.

Five days later, on October 25, 2005, Bonneville noted in its records that Debtors had filed bankruptcy. Bonneville contacted the Canyon County sheriff's office, informed the sheriff of the bankruptcy, and instructed that all garnished funds (including funds held by the sheriff from the last prebankruptcy garnishment) be returned and released. Mrs. Gaytan testified that she did in fact receive all the garnished funds in her next paycheck.

Certain additional facts are set out and discussed below.

## DISCUSSION AND DISPOSITION

### A. Automatic stay and sanctions for violations

As this Court has noted on numerous occasions, the automatic stay is one of the fundamental debtor protections under the Code, stopping all collection activities. *See In re Risner*, 317 B.R. 830, 834, 04.4 I.B.C.R. 172, 173 (Bankr. D. Idaho 2004). The protections of the automatic stay are enforceable through § 362(h).[3]

In order for a debtor to recover under § 362(h), he or she must prove that (1) an action occurred in violation of the stay, (2) the creditor was on notice of the

---

[3] Section 362(h) provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

MEMORANDUM OF DECISION - 3

bankruptcy and thus its actions were willful[4] and (3) debtor suffered damages as a consequence of the creditor's actions. *See Risner*, 317 B.R. at 835, 04.4 I.B.C.R. at 173; *In re Flack*, 239 B.R. 155, 162-63 (Bankr. S.D. Ohio 1999) (listing similar elements).

### 1. Was there a violation of the automatic stay?

The automatic stay arose on and was in effect from the date Debtors filed their petition, October 14, 2005. Bonneville's actions in initiating the continuing garnishment of Mrs. Gaytan's wages occurred prior to bankruptcy. But creditors in such a position, having commenced an execution, garnishment, foreclosure or other collection process, are under an obligation to cease such activities after a bankruptcy is filed. *See*, *e.g.*, *In re Johnson*, 262 B.R. 831, 847, 01.2 I.B.C.R. 72, 77-78 (Bankr. D. Idaho 2001); *accord Eskanos & Adler P.C. v. Leetien,* 309 F.3d 1210, 1214-15 (9th Cir. 2002); *see also* § 362(a)(1) (staying "the commencement *or continuation*" of process to collect a pre-petition claim against a debtor). That Bonneville's continuing garnishment was enforced against Mrs. Gaytan's October 20, 2005 paycheck is a prima facie violation of § 362(a)(1)'s automatic stay. However, in order to recover under § 362(h), Debtors must also prove that such actions were willful, and that Debtors suffered damages.

---

[4] Once a debtor shows the creditor was put on notice of the bankruptcy, "any [collection] actions intentionally taken thereafter are 'willful' within the contemplation of § 362(h)." *Risner*, 317 B.R. at 835, 04.4 I.B.C.R. at 173.

MEMORANDUM OF DECISION - 4

**2. Was there a willful violation of the automatic stay?**

In order to show that Bonneville's actions were willful, Debtors must prove Bonneville had notice of their bankruptcy filing. *Risner*, 317 B.R. at 835, 04.4 I.B.C.R. at 173.

Typically, the BNC notice to creditors establishes a presumption that the creditors on the mailing matrix received such notice and thus had actual notice of a debtors bankruptcy filing.[5] However, in this case, Debtors did not submit a mailing matrix with their petition as they were required to do, and thus no BNC notice to creditors was generated until early November, 2005, well after the stay violation occurred.[6]

Debtors do not rely on the BNC notice to establish notice to Bonneville of their bankruptcy filing. Instead, they assert the October 19, 2005 fax sent to Talboy, Bonneville's attorney, sufficed to put Bonneville on notice of their bankruptcy as of that date. Debtors introduced a fax transmission confirmation sheet at hearing, noting that the fax was indeed sent to Talboy's fax machine at 4:01 p.m. that day. *See* Ex. 1. However, Debtors provided no proof as to

---

[5] "When a creditor is listed in a debtor's bankruptcy matrix and the clerk certifies that a notice of the case was sent to the creditors in the matrix, a presumption arises that those creditors received notice of the bankruptcy filing." *In re Mauck*, 287 B.R. 219, 221-22 (Bankr. E.D. Mo. 2002).

[6] Though the mailing matrix, schedules and statement of financial affairs were not filed until October 30, Debtors' counsel had sufficient information concerning the garnishment to prepare the October 19 fax to Talboy. Precisely when counsel gained the information, between initial contact with Debtors and October 19, is not critical to today's Decision.

MEMORANDUM OF DECISION - 5

Bonneville's receipt of actual notice.[7]  *See* Ex. 1.

Talboy is not Bonneville's employee such that a notice to him suffices as notice to Bonneville.  Instead, Debtors argue notice is sufficient based on an agency relationship between Talboy and Bonneville.

Notice to an agent may be sufficient to put a creditor on notice of a debtor's bankruptcy filing.  *See In re Withrow*, 93 B.R. 436, 438 (Bankr. W.D.N.C. 1998) (imputing notice to creditor-principal upon a showing of notice to collection agent, and holding creditor liable for the willful § 362(a) violation of its agent); *In re Bragg*, 56 B.R. 46 (Bankr. M.D. Ala. 1985) (noting that oral notice to creditor's agent is sufficient notice to impose § 362(h) damages on creditor-principal for violation of the automatic stay).

Here, Debtors did not establish that Talboy was Bonneville's agent at the time notice was sent to his office, or that Talboy was participating in collection on behalf of Bonneville, or that notice to Talboy was sufficient to provide Bonneville

---

[7] Bonneville's manager, Richard Fairbanks, did testify that Bonneville's internal documents contained a notation of Debtors' bankruptcy on October 25, 2005.  This was after the garnishment of October 20 but well before the BNC notice was issued.  Mr. Fairbanks further testified that Bonneville's procedure, upon receiving notice of a bankruptcy, was to immediately note the filing in its records and stop all collection activities.  Thus, he concluded, Bonneville first had actual notice on October 25, 2005 when the notation was made in its records.  Because Bonneville somehow received notice on October 25, 2005, and because there was no other notice to Bonneville until the BNC notice, Bonneville's counsel concedes that Debtors' fax to Talboy was routed to Bonneville through Talboy's office.  *See* Doc. No. 18 at 4.  Though  Talboy did not see the fax and he could not testify as to when the fax was transmitted to Bonneville or by whom, the Court concludes it was routed by his office staff to Bonneville consistent with their standard procedures.

MEMORANDUM OF DECISION - 6

actual notice of the bankruptcy.[8]

Testimony indicated Talboy obtained the state court judgment and initiated the garnishment on behalf of Bonneville. But testimony also indicated that, once collections on a judgment commenced, Bonneville monitored and handled its own collection activities and process without Talboy's involvement or assistance in order to avoid incurring additional legal fees. For instance, when Bonneville received actual notice of Debtors' bankruptcy filing on October 25, 2005, it – not Talboy – contacted the sheriff and gave instructions to cease garnishment of Mrs. Gaytan's wages and return the garnished funds.

But, even if the Court were to assume that Talboy was Bonneville's agent and the October 19 fax was received in his office, it must determine whether there was effective notice and an act – or rather, in these circumstances, a failure to act – constituting a willful violation of the automatic stay. The question is whether notice was provided seasonably enough to allow Bonneville to halt the garnishment that occurred on October 20.

The Court concludes it was unreasonable for Debtors and their counsel to assume, having provided no earlier notice to Bonneville or Talboy, that a fax, sent at 4:01 p.m. on October 19 to Talboy would allow Bonneville the opportunity to

---

[8] To be sure, Bonneville ultimately did get notice, and it was via Talboy. But that was, according to the evidence, on October 25. What is critical is whether Bonneville got notice before the October 20 garnishment, and that requires proof of agency.

MEMORANDUM OF DECISION - 7

ensure that Mrs. Gaytan's employer would halt the garnishment on the next day's paycheck.  "The responsibility rest[s] squarely upon the [debtor's] shoulders to ensure that the [creditor] received notice of the . . . bankruptcy filing." *Allen v. Wells Fargo Bank Minnesota, N.A.*, No. 03-1990, 2005 WL 3370432 at *3 n.9 (D.D.C. Dec. 13, 2005) (stating also that "It would not have been overly burdensome for the [debtor] to, as the Bankruptcy Court suggested, bypass the voice mail option and speak to a live person during business hours, or follow up their message with an additional phone call or written confirmation.").

There were no phone calls from Debtors' counsel to Talboy, Bonneville, the sheriff, or Mrs. Gaytan's employer, seeking to alert any or all of them that a bankruptcy had been filed (indeed, one filed several days earlier) and that garnishment should not occur.  There were no calls to ensure the fax was received at Talboy's office, or brought to Talboy's attention, or otherwise acted upon.  Further, there was no proof that anyone could have stopped the October 20 garnishment deductions upon receiving notice of Debtor's bankruptcy at 4:01p.m. on October 19.[9]

It is Bonneville's failure to act to stop the continuing garnishment from and after receiving notice of bankruptcy that is assailed as a stay violation under § 362(a)(1) and a willful one under § 362(h).  Even assuming agency, Bonneville

---

[9] Debtors did not establish when the paychecks were prepared or when, on the 20th, they were issued.

MEMORANDUM OF DECISION - 8

had less than an hour in the business day on October 19, and whatever portion of the business day on October 20 existed before checks were issued, within which to try to halt the garnishment. This case is clearly distinguishable from those in which creditors, with ample notice and opportunity, failed to cease collection activities. *See*, *e.g.*, *In re Daniels*, 316 B.R. 342, 04.4 I.B.C.R. 157 (Bankr. D. Idaho 2004); *In re Andrus*, 04.3 I.B.C.R. 137, 2004 WL 2216493 (Bankr. D. Idaho 2004); *In re Jacobson*, 03.2 I.B.C.R. 119, 120-21 (Bankr. D. Idaho 2003); *Johnson*, 262 B.R. at 847-48, 01.2 I.B.C.R. at 78.

That an actionable "willful violation" occurred is questionable on the evidence and specific facts of this case. Even if it did occur, Debtors have failed to establish a right to relief under § 362(h).

### 3. Was there proof of damages from the alleged violation?

Debtors needed to provide proof of actual damages to recover under § 362(h). *See generally*, *Jacobson*, 03.2 I.B.C.R. at 121. Not only does § 362(h) clearly require such proof, this Court has instructed Debtors' counsel, on numerous occasions, that such proof is required. *See*, *e.g.*, *Risner*, 317 B.R. at 836-37, 04.4 I.B.C.R. at 174; *In re Masi*, No. 05-00412, Doc. No. 55 at 12 (Bankr. D. Idaho May 24, 2005); *In re McCain*, No. 03-04624, Doc. No. 42 at 9 (Bankr. D. Idaho Aug. 19, 2004) ("[T]he Court declines to award Debtors damages because the record is insufficient to prove they suffered any actual damages, nor is

MEMORANDUM OF DECISION - 9

there any competent proof regarding their claims for recovery of attorney fees and costs."). Indeed, Debtors' motion appears to acknowledge this requirement. *See* Doc. No. 10 at 3 ("Gaytans request the opportunity to present argument, testimony and evidence, for an award of actual damages, punitive damages, and reasonable attorney fees for the prosecution of this action.").

Despite clear knowledge of the requirement to prove actual damages, Debtors' counsel utterly failed to present competent proof of actual damages[10] or of reasonable attorney's fees and costs. Thus, the Court cannot grant relief under § 362(h).[11]

**CONCLUSION**

Upon the evidence and record and for the reasons stated above, Debtors'

---

[10] Debtors' post-hearing brief asserts they were injured by Bonneville's and Talboy's actions, which "caus[ed] an economic hardship to the Gaytans, as well as mental anguish and distress." *See* Doc. No. 19 at 3. At hearing, Debtors did not establish quantifiable economic damages, and their brief does not suggest what amount should be awarded. Nor did they make any attempt to establish emotional distress damages as required by *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148-49 (9th Cir. 2004).

[11] Debtors also request punitive damages. Since they failed to prove any actual damages, punitive damages are not available to them. *See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP 1995) (holding that "no punitive damages should be awarded in the absence of actual damages"). In addition, even had Debtors established actual damages, they failed to justify punitive damages or substantiate their assertion that Bonneville and Talboy's actions were "malicious, wanton or oppressive" or that their actions demonstrated a "reckless or callous disregard for the law." *See* Doc. No. 10 at 3. Quite the opposite, it appears Bonneville took efforts to halt and reverse the continuing garnishment upon first receiving notice of Debtors' bankruptcy. It did this prior to the Debtors' filing their motion for sanctions and without any prompting from Debtors' counsel.

MEMORANDUM OF DECISION - 10

motion, Doc. No. 10, will be denied.[12]  Counsel for Bonneville and Talboy shall submit an appropriate order.

DATED:  January 10, 2006

/s/ Terry Myers
TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[12] Bonneville and Talboy request an award of attorney fees and costs incurred in defense of the motion under Fed. R. Bankr. P. 9011.  *See* Doc. No. 15 at 5; Doc. No. 18 at 14.  Despite the several issues noted in this Decision, and a serious concern that Debtors' counsel has failed to heed the rulings of this Court in *Risner* and numerous other cases in which he has advanced § 362(h) motions, the request of Bonneville and Talboy will not be considered due to their failure to follow the procedural requirements of Rule 9011.